## TOWN OF WEYBRIDGE *v.* WILLIAM M. CUSHMAN.

*Pauper. Transporting into other town. Verdict against evidence.*

1. A person is liable under R. L. s. 2844 for transporting a pauper from one town to another with intent to charge the latter with the pauper's support, even though such latter town is legally chargeable therewith.

2. *Held*, that upon the defendant's own testimony he was guilty of the offence charged, and that a special verdict to the contrary was against the evidence and should be set aside.

This was an action in two counts under R. L. s. 2844, the first count to recover the penalty and the second to recover the amount expended in the pauper's support. Plea, the general issue. Trial by jury at the December term, 1891, Ross, Ch. J., presiding. The jury returned a special verdict, upon which the court gave judgment for the defendant. The plaintiff excepts.

The pauper in question was a boy named Charlie, about eight years of age, and the illegitimate son of one Ida Cudworth. When Charlie was about two years of age Ida Cudworth married John McCullom, and in the winter of 1888-9 was living with her husband in the town of Randolph. They were extremely poor, and in August, 1890, agreed to separate.

Thereupon the husband went to live at Royalton where he afterwards resided, while Mrs. McCullom with Charlie went to live at the house of one Lucy Sanders in Weybridge, where her father made his home, and where she continued to reside with Charlie until October 29, 1890. On that day she took the child to the Home for Destitute Children in Burlington where he remained until April 18, 1891, when an officer of the Home brought the child to Middlebury and arranged with one Williamson to carry him to the house of Lucy Sanders. Williamson carried the child a part of the way when he met a boy of Lucy's, who took Charlie home with him. He was refused admission to the house and remained on the door step for about two hours, when Lucy carried him to the defendant, who was the overseer of the poor for the town of Middlebury, in whose care he remained until the following day. Then the defendant re-transported him to the house of Lucy, and it was for this act that the suit was brought.

The defendant himself testified that Lucy Carter brought the child to him one afternoon about three o'clock, saying she was going away and there was no place for the child to stay; that he told her the child was not for him to take care of, but that he would take it until the next day; that she did not return for it the next day, and that he took it to her house and left it there; that he then told her the child didn't belong to Middlebury and that she would have to see the Weybridge poormaster; that he thought the boy belonged to the town of Weybridge and would have to go there.

The plaintiff requested the court to charge the jury that the plaintiff might recover on the first count although both Ida and Charlie had their residence at the time of the transportation in the plaintiff town. This the court declined to do, and instructed them upon that point as follows:

"1. The very language of the statute, 'intent to charge,' means to charge with the support wrongfully, when he had no

right to take him there as a pauper of that town; and as the intent is the gist of this recovery certainly under the first count, you must find the intent, that he intended to do that."

The jury returned several special findings of which the third was as follows:

"Third. That defendant did not carry Charles McCollum to Weybridge with intent to charge the town of Weybridge with the support of the child."

The plaintiff moved to set aside said third finding as against the evidence, which motion the court overruled.

*Stewart & Wilds*, for the plaintiff.

*W. H. Bliss*, for the defendant.

The third finding was warranted by the evidence. *Walling-ford* v. *Gray*, 13 Vt. 228; *Barnet* v. *Peacham*, 33 Vt. 205; *St. Johnsbury* v. *Goodenough*, 44 Vt. 662.

The opinion of the court was delivered by

TAFT, J.  A person is liable to the penalty mentioned in s. 2844 R. L. if he transports a pauper from one town to another town with intent to charge the latter with the pauper's support, and he is liable even if the pauper is a resident of the town to which he is transported, and the latter town chargeable with the pauper's support.  The first request of the plaintiff embodying this proposition should have been complied with.  In failing to do so, the court erred, and we see nothing in the charge as given that corrected the error.  The jury were told that if one town contracted with a person in another town, to support a pauper for a definite time and at the end of the time refused to do anything further with him, the party had the right to return the pauper to the town making the contract.  The court then (see paragraph six) applied this rule to the case under consideration.  In so doing there was error.  If Mrs. Sanders procured the defendant to keep the child until the next day, in Middle-

bury, and did not take the child away at the time named, the defendant had no right to carry the pauper back to Weybridge with intent to charge that town with its support. If he did, he would be liable to the penalty named in the statute. Had the arrangement to keep the child in Middlebury been made by the town of Weybridge, or its authorized officials, a different question would have been presented, and the act of the defendant in taking the child back to Weybridge might have been legal and the charge of the court warranted. But the rule has no application to a contract made by a private person to keep a pauper in another town than the one in which he is residing.

The third finding was against evidence. The point involved was, did the defendant take the pauper to Weybridge with intent to charge that town with its support. He testified that he started to take the child back to its mother at Mrs. Sanders', supposing she lived in Middlebury near the bridge between the two towns, but that on his way he inquired of some one who told him she lived across the river in Weybridge; that he then made up his mind that the pauper was chargeable to Weybridge; he had no doubt but that Weybridge would take care of him and that the result would be that it would have to take care of him. The defendant knew the child was a pauper; he testified that he told Mrs. Sanders "that she would have to see the Weybridge poormaster; that he would see him for her; that Mrs. Sanders told him she was not able to keep the boy." The defendant further testified "I thought he would have to go to the town of Weybridge; I thought he belonged there; I thought he didn't belong to the town of Middlebury and I would take him back and let them (Weybridge) pay." The defendant ought not to complain if the court consider his testimony as true. From it, there can be but one conclusion, as to the intent with which he took the child to Weybridge, and that is, that he intended to charge the plaintiff with its support.

The petition for a new trial and the other special findings become immaterial.

*Judgment reversed, cause remanded.*